on the calendar for oral argument, one on submission. The first is Doctors Associates v. Menards-Tropathy, it's at all. Council ready? So just give us a second to get set up. Give me one second. I went paperless and it takes more time. Okay. Mr. Bolter, is that it? Yes. And you've reserved two minutes for rebuttal. I have. You may proceed. And the actual citation should be Weitzman v. Stein, 857 F. 2nd, 653 at 658-9, quoting Moore's Federal Practice. I apologize for that error. Your Honors, we request reversal of the injunction that the District Court issued for two main reasons. First, the injunction was issued in derogation of the Anti-Injunction Act, specifically to the relitigation exception. And second, the arbitration scheme at issue violates public policy vis-à-vis the Patels, who are the persons in the California action, on multiple levels. As to the first issue regarding the relitigation exception, it's a narrow exception, and it requires that the exact issue be decided by the Federal Court. In order to have preclusive effect with respect to the State law issue here, there were no issues that were decided between the Tripathys and Patel with respect to the arbitration agreement. In fact, there's no arbitration agreement at all between the Tripathys and Patel. Right, but the arbitration agreement provides that any disputes related to the franchise, even with individuals who aren't parties to the arbitration agreement, have to be arbitrated, right? It does say that, yes, Your Honor. But I would add that arbitration is an affirmative defense in the first instance. And we're trying to get, before you have arbitration raised as an affirmative defense, you have jurisdiction in a court that has jurisdiction. So this, before you get to delegation, before you get to arbitration, you have to have jurisdiction over a party to adjudicate those rights. If Mr. Patel does not want to have arbitration, he doesn't have to have it. The Baker case out of the Second Circuit makes it clear. Arbitration does not act without the wishes of the parties. Parties can revoke their consent to arbitration at any time. And a court with jurisdiction has the opportunity to proceed. So that would be the first. Well, I mean, we've addressed a similar issue in another case involving Doctors Associates, the Stewart case, right? Well, the Stewart case did not discuss the issues that we framed here in terms of the arbitration agreement exculpating actors like Patel. And it relied primarily upon the Kroll v. Doctors Associate case. The Stewart case did not really discuss Anti-Injunction Act principles. It had a brief citation, but it relied on the Kroll case, which was out of the Seventh Circuit, and Kroll decided that there was all the parties were in front of the court at that particular time, so there was no violence to the Anti-Injunction Act. And, in fact, the Kroll case was decided on a Section FAA, Federal Arbitration Act, Section 3 stay. And if you note the Federal Arbitration Act, it gives the court that has jurisdiction over the case, the primary case, the case in principle, the discretion to stay or not stay, depending upon various factors. And, in fact, Doctors Associates tried to move for a stay in the California action in this case, and they withdrew that days before the stay, because part of the issue on a stay is determining whether there's a valid arbitration agreement or not. So when they figured out, after reading our papers, that the California court was going to have to pass on the conscionability or enforceability of the whole arbitration scheme, they withdrew their motion. So the exact issue was not litigated in the federal court, and assuming that Mr. Patel raises the affirmative defense of arbitration, there'll be a whole host of other issues that the California court would have to decide. First, they'd have to decide whether there is an applicable arbitration agreement between the parties. Here, the parties concede there's none between Patel and the Tripathys, so Mr. Patel would have to invoke some sort of estoppel theory in order to, at least, initiate arbitration or delegation against Tripathys. And, second, they would have to overcome the fact that the arbitration clause itself says that there is to be no arbitration against Patel. It's an exculpatory provision in that first instance. In addition, the arbitration agreement, and the arbitrators are bound by the limitations of the arbitration agreement, the arbitration agreement says that the only parties to arbitration permitted under this agreement are the Tripathys and Seboye. So, in a sense, the arbitrators would not have jurisdiction to override that, even though the AAA rules, as cited in the lower court opinion, appear to give the arbitrator jurisdiction to decide issues over enforceability scope of the arbitration clause. I mean, the arbitration agreement is pretty clear on this, right? The Tripathys further agree that the foregoing parties are intended beneficiaries of the arbitration clause. All claims against them that arise out of or relate to this agreement must be resolved with doctor's associates through arbitration, right? That's what the agreement says, Your Honor. But Judge Hall called this a bulletproof vest, and she's right. And this court had an opportunity to consider a bulletproof vest in another case recently. That was the Gingras case, which we brought to the court's attention that was decided. In that case, the court struck down in the first instance a scheme that prevented the parties or the arbitrator from applying state and or federal statutes against public policy. That followed the Mitsubishi case and the American Express case, where the Supreme Court held you have to be able to vindicate your statutory rights. And in this case, it's not that far a stretch from denying somebody the right to bring claims under state or federal statutes and denying them the opportunity to bring claims against an individual who may be liable and subject to state and federal statutes. Why isn't that a question in the first instance for the arbitrator under the delegation provision? Because, Mr. Patel, well, in the Gingras case, the court confronted, albeit briefly, the delegation issue and found that there were enough problems with the arbitration agreement, just looking at it, that the court decided it was in the best position to decide whether that agreement violated public policy or not. And is that your argument here? What specifically is your argument here? Well, the argument here is twofold. One is that the court can look at this agreement and see that it violates public policy in terms of denying the Tripathi's the right to proceed under. But we're not just a roving commission to look for violations of public policy, right? I mean, this is an agreement, an agreement that says you've got to arbitrate. You can raise these points about public policy in the arbitration, right? Well, we would raise them in the arbitration. I see I'm out of time. You can answer. We could raise these issues in arbitration, but the arbitrator has no jurisdiction over Patel's rights. So Mr. Patel is not going to be bound by anything that the arbitrator decides. And if the arbitrator decides we can sue him in state court, he's going to be free to raise these issues all over again. So in the first instance, the arbitration agreement has not even been invoked by Mr. Patel. So the primary contention is that the Anti-Injunction Act does not allow an injunction in the first instance where a party has not raised arbitration as an affirmative defense. All right. Thank you. We'll let you reserve a few minutes. Mr. Roth? Good morning, Your Honor. This is Dave Roth from Wigan and Dana for Doctors Associates. The only thing the district court decided in this case is that whether the Tripathi's are arbitrable and how they need to be arbitrated are questions the parties agreed would be decided in the first instance by the arbitrator. And based on that, Judge Hall directed the Tripathi's to bring their claims in arbitration so that the arbitrator can decide how those claims are arbitrated. And she enjoined the Tripathi's from trying to relitigate this question of who would decide arbitrability in California state court, something they were actively asking the California state court to relitigate at that time. On appeal, the Tripathi's, Mr. Bolter focuses mostly on the Anti-Injunction Act, but I think if you focus first on delegation provision, the Anti-Injunction Act issue becomes more straightforward. As Your Honor was noting, the Arbitration Act, and this is on Joint Appendix 30, it explicitly incorporates AAA arbitration rules. Those rules give arbitrators jurisdiction to decide disputes about the scope and enforceability and validity of an arbitration agreement. And under CONTEC and other cases from this circuit, this court has consistently held that when an agreement explicitly incorporates AAA rules, the parties have agreed to delegate questions about arbitrability to the arbitrator. That's just what happened with this arbitration agreement. Doctors Associates and the Tripathi's have a dispute about whether these claims against Patel can be raised in arbitration, and that's an issue that has to be decided in arbitration itself. Now, the Stewart case that I mentioned, that I asked Mr. Bolter about, I mean, do you have a different view as to Stewart, or do you agree with him that it's distinguishable from this case? I think Stewart is directly on point that, you know, it compelled arbitration of claims brought against Doctors Associates development agents, even though they were not before the court, and also affirmed an injunction issued by the district court direct — prohibiting the plaintiffs in that case, the State court plaintiffs, from trying to relitigate the question of whether the claims were arbitrable. So in our view, it's directly on point and establishes the validity of the court's injunction here. How could the Tripathi's vindicate their claims against the Patels under this agreement? Your brief, I think, argues that the arbitration agreement only governs how they can do that, not whether they can. And I guess I don't really understand that argument. It seems that the arbitration agreement provides that they couldn't bring claims against Patel, either in court or arbitration. So what's your response to that? The arbitration agreement says that they cannot bring claims against Patel, but we have stipulated and continue to stipulate that everything that is alleged in the California action alleges that actions by Patel that were in the scope of his agency for Doctors Associates. And so they can bring those claims directly against Doctors Associates and try to hold Doctors Associates liable. You stipulate outside of the arbitration agreement. That's just something that you're representing. Yes. What is alleged in California, we stipulate that those alleged actions that Patel took in the course of his agency, if they successfully prove those facts, then they couldn't recover whatever relief they're entitled to from Doctors Associates directly. And that's the scheme that the arbitration agreement sets up to prevent parties from trying to do an end to them. But that's not in the arbitration agreement. That's just something that you've represented to the court that you are agreeing to. Is that right? Am I understanding what you just said? No. I think it is in the arbitration agreement. That's how we interpret section paragraph D of the arbitration agreement. That claims that any franchisee has against one of Doctors Associates' agents will be brought directly against Doctors Associates. And so the claim exists just as it would. It's just that Doctors Associates is the party rather than whatever agency. So I guess I don't understand that. One of the claims, as I read it, was that against Patel is for intentional interference with contract. Right? And in that situation, how could a claim against a third party for intentional interference be brought against one of the parties to that contract? That seems sort of illogical to me. Yeah. Well, I note in the first instance that that's something the arbitrator will decide, and it may be that the arbitrator decides that claim is not arbitrable because it can't be brought against Patel. So that's not really before the court, and it's something that will be addressed later in arbitration. In our view, the claim that he intentionally interfered with the contract with Doctors Associates, if you look at what the California complaint is essentially alleging, the theory is Doctors Associates brought these arbitration actions against Tripathi's. They succeeded in those arbitration actions. Some of the Tripathi's franchise agreements were terminated, and Patel interfered with the contract by sort of helping Doctors Associates do that, or he had some sort of nefarious purpose. So, you know, if they prove that the elimination of the Tripathi's franchise agreements was invalid, that strikes me as a breach of contract claim that can recover whatever damages they would have from that from Doctors Associates as a breach of contract. Let me try it this way. If you didn't stipulate to what you said earlier, could the Tripathi's still vindicate their rights against Patel or not? And if not, isn't that a problem with the arbitration agreement? I think they still could vindicate their rights because we are saying that these claims fall within the scope of the arbitration agreement. Now, if the Tripathi's alleged something that we did not think was an action related to the franchise relationship and therefore didn't fall within the scope of the arbitration clause, we would not compel arbitration of that claim. The reason we're compelling arbitration of that claim is that we believe it falls within the scope of the clause and needs to be asserted against Doctors Associates directly, because that's what the Tripathi's agreed they would do in paragraph D. Now, the Tripathi's spend much of their argument talking about how this provision requiring them to arbitrate claims against Patel is unconscionable or contrary to public policy. And I think that's squarely directed by or addressed by the Supreme Court's rent-a-center decision, which says that when an arbitration agreement like this one contains a delegation clause, it's not enough for a party to say that the arbitration agreement as a whole is contrary to public policy or some provision of it is contrary to public policy. It needs — the party needs to specifically attack the delegation clause and say that that is contrary to public policy. And I don't see anything in the Tripathi's briefs, and I haven't heard anything today, saying that there is something about the delegation clause specifically that incorporation of AAA rules that is contrary to public policy. So that dispute about whether the arbitration agreement as a whole is enforceable needs to go to arbitration, and then they can make whatever arguments they want based on public policy about whether those terms are enforceable and how they're going to be applied. And the arbitrator will decide what comes from that. And it may be that some of the claims can't be arbitrated. We don't know. That's something that's yet to be decided. Turning last to the Anti-Injunction Act issue, this injunction falls squarely within the relitigation exception. The Tripathis brought these claims in California. The District of Connecticut held that all of the claims they asserted needed to be brought to arbitration so that the arbitrator could decide whether and how those claims are arbitrable. And the Tripathis asked the California court for a declaratory ruling that none of the claims were arbitrable and that doctors associates would never be entitled to arbitration. And that's directly contrary to an issue the District of Connecticut actually decided, namely that the arbitrability of the claims must be decided in arbitration. And so she enjoined that under the relitigation exception. And this court has upheld injunctions in essentially identical circumstances in the Stewart case, more recently in the Emilio v. Sprint Spectrum case. So in our view, that's an unremarkable instance of issuing injunction in the context of Federal Arbitration Act. If the panel has no further questions, we'll rest on our briefs and ask that the decision of Judge Hall be affirmed. All right. Thank you. Thank you. Mr. Roth, we'll now hear from Mr. Balter for two minutes. Thank you, Your Honors. Delegation provision in the first instance depends upon a valid arbitration agreement. Here, there was no valid arbitration agreement between the Patels and Tripathi. So their claims should not be sent to the arbitrator under a delegation clause. In the first instance, it has to be raised as an affirmative defense. I repeat myself a little bit. Picking up on Your Honor's question, the interference claim that we've brought, Mr. Patel acts as both an agent for Subway in supervising the franchisees at the local level, including Mr. Tripathi, but he's also a competitor in the sense that he owns his own franchises. So the interference claim that we've articulated arises out of his activities as a competitor, but includes his power that he exercises over the Tripathis as an agent. But he was seeking for his own benefit to terminate the Tripathis franchises so that he could take over those locations. That's the allegation. He could take for himself the Tripathis locations. In terms of the statutory cause of action, Business and Professions Code 17203, which is the statute at issue, provides that a court with jurisdiction over an offender can order that offender to enjoin them from unfair competition, but can also make other equitable sanctions on a person such as Patel. They can order restitution if there happens to be a restitution type of claim. They can enjoin any type of unfair competition that a party engages in. That is a statutory right and remedy that will never be available in arbitration against Patel. And it's not something that doctors and associates can be liable for. Doctors and associates, proxy arbitration, which is what this system sets up, violates the public policy against shifting. These are cases that we cite in our briefs. Against shifting liability from a tortfeasor to another person. There's a Connecticut case and a California case. It violates the policy of indemnifying an intentional tortfeasor. Because tort policy has both deterrent, punitive, and compensation functions. All they deal with is the compensation functions in terms of Subway's arguments. They don't deal with the deterrent functions, the power of the court to send a message to a violator. Here you have a rogue actor that is essentially free to act with impunity vis-à-vis the other franchisees under his umbrella. And for these reasons, arbitration is supposed to be a substitute for litigation, not a bulletproof vest or a vehicle to immunize tortfeasors from intentional torts and statutory violations. For these reasons, we ask that the injunction be reversed. Okay, thank you both. We'll reserve decision.